**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ALICIA B., | ) | NO. CV 18-5084-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | **AND ORDER OF REMAND** |
| Commissioner for Operations, | ) | |
| Performing duties and functions not | ) | |
| reserved to the Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.


**PROCEEDINGS**


Plaintiff filed a complaint on June 8, 2018, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on July 19, 2018.

Plaintiff filed a motion for summary judgment on December 31, 2018. Defendant filed a motion for summary judgment (titled as an opposition to Plaintiff's motion for summary judgment) on January 29, 2019. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed June 14, 2018.

**BACKGROUND**

Plaintiff asserts disability since December 1, 2009, based on a combination of alleged impairments (Administrative Record ("A.R.") 496-503, 521-22)). As detailed below, treating physicians Dr. Lee Razalan and Dr. Miguel De Perio opined that Plaintiff's impairments disable her from all employment. See A.R. 1885-87, 1973-74, 2055-57, 2118-20.

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff, a vocational expert and a medical expert (A.R. 49-61, 406-23). In a decision dated March 24, 2017, the ALJ found that Plaintiff has the following severe impairments: obesity; irritable bowel syndrome; fibromyalgia; spondylolisthesis of the lumbar, cervical and thoracic spine; discogenic disease of the cervical spine; and hypertension (A.R. 51). However, the ALJ also found Plaintiff capable of performing a limited range of light work. See A.R. 54-60 (adopting medical expert's residual functional capacity assessment at A.R. 410-11, and giving "little weight" to the opinions of Drs. Razalan and De Perio). The ALJ identified certain light jobs Plaintiff assertedly could perform, and, on that basis, denied disability benefits from August 27, 2014 (the date of Plaintiff's

application) (A.R. 60-61 (adopting vocational expert testimony at A.R. 420-21)).

On April 26, 2018, the Appeals Council denied review (A.R. 1-6). Plaintiff had submitted to the Appeals Council additional medical records, including records from Drs. Razalan and De Perio for the period from October 27, 2016 through December 11, 2017, some of which the Appeals Council declined to "consider and exhibit" (A.R. 2). According to the Appeals Council, the evidence pre-dating the ALJ's adverse decision did not show a reasonable possibility of changing the outcome of the decision, and the evidence post-dating the ALJ's adverse decision did not relate to the period at issue (A.R. 2).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

///

///

If the evidence can support either outcome, the court may
       not substitute its judgment for that of the ALJ.  But the
       Commissioner's decision cannot be affirmed simply by
       isolating a specific quantum of supporting evidence.
       Rather, a court must consider the record as a whole weighing
       both evidence that supports and evidence that detracts from
       the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
quotations omitted).

                              **DISCUSSION**

**I.    Summary of Relevant Evidence**

       **A.    Plaintiff's Testimony and Statements**

    At the administrative hearing on December 6, 2016, Plaintiff
testified that she lived with her mother and her children (A.R. 412-
13).  Plaintiff said that she did no housework and that her mother and
her children did all of the housework (A.R. 413).  Plaintiff said that
she cannot work because of severe anxiety, vertigo, a pinched nerve in
her right arm and shoulders, and intermittent problems with pain,
tingling, and tightness in differing parts of her body, including pain
that wakes her up (e.g., the previous week she reportedly woke up with
pain in the ball of her foot that prevented her from putting any
pressure on her foot) (A.R. 413-15).  Plaintiff said she had been
taking Ativan or Lorazepam for the past 10 years for anxiety, which

she attributed to being sick and not understanding why (A.R. 415-18). Plaintiff estimated that she could sit for an hour before getting tingling and numbness in her buttocks (which can cause her to urinate on herself), and said that she could stand for "not that long" and walk for "not that far," reporting she even had difficulty walking from her vehicle to the hearing room (A.R. 413-14).

In a "Function Report - Adult" form prepared more than two years before the hearing, Plaintiff reported that she had an anxiety problem that caused her body to ache and limited how much she could be around other people, sciatic nerve compressions that caused her to lie down and limit how long she could sit or stand, lumbar spine pain with radiculopathy, numbness and tingling throughout her whole body, and depression (A.R. 527). At that time (October of 2014), Plaintiff reportedly could take her kids to and from school, feed and shower them, "start" dinner, prepare meals ranging from sandwiches to frozen dinners to other meals with the help of her then 12 year old child, do dishes, sweep, mop, and vacuum (every other day with rest between activities), and shop for groceries twice a week for 10 to 30 minutes (A.R. 528-30). Plaintiff indicated limitations in lifting, squatting, bending, standing, walking and sitting (A.R. 532).

**B.   Records from Plaintiff's Treating Physicians**

There exist treating records from Drs. Razalan and De Perio for the period from January of 2014 through December of 2017. See A.R. 1831-2148 (treatment records through October of 2016 submitted to the ALJ); see also A.R. 73-103, 118-23 (treatment records from October of

2016 through December of 2017 submitted to the Appeals Council). Dr. Razalan had treated Plaintiff since May of 2006 (A.R. 1931). In the record before the ALJ, the doctors had diagnosed a number of conditions, including anxiety/depression, chest pain (musculoskeletal), persistent neck pain, ovarian cysts, chronic lumbar spine pain, vertigo, high blood pressure, H. Pylori bacteria, cervical radiculopathy, degenerative joint disease in the lower extremities, acute tendonitis in the right leg, gastritis, peripheral neuropathy, "GERD" (gastro-esophageal reflux disease), cervical disc disease, lumbar disc disease, irritable bowel syndrome, arthralgia and myalgia (A.R. 1866, 1894, 1899, 1905, 1922, 1928, 1930, 1958, 1997, 2007, 2032, 2067, 2070-71, 2074, 2077, 2083, 2084, 2088, 2093, 2095, 2100, 2123, 2143, 2148).

Plaintiff consulted with Dr. Kenneth Bradley on March 9, 2015, for pain management including epidural steroid injections (A.R. 1979, 1981). Plaintiff reported a history of lumbar back pain which "waxes and wanes" with activity, radiating to the hips and down the legs, with dysesthesia, numbness, tingling, dull achy sensations and spasms (A.R. 1979). Dr. Bradley observed obvious myofascial plain trigger points in Plaintiff's lumbosacral area (A.R. 1979). Dr. Bradley gave Plaintiff a lumbar epidural steroid injection and three trigger point injections of Toradol (A.R. 1979, 1981).

When Plaintiff returned to Dr. Bradley on September 12, 2016, she reportedly had tenderness and spasm throughout her spine and decreased sensation at L4-L5-S1, sensory dysesthesias at C4-C5, C5-C6 and C6-C7, hip, shoulder and knee tenderness, and positive straight leg raising

tests (A.R. 1821-22).  Dr. Bradley diagnosed low back pain with radiculopathy, lumbosacral spondylolisthesis, chronic pain syndrome and fibromyalgia (A.R. 1822).  Dr. Bradley again gave Plaintiff a lumbar epidural steroid injection and three trigger point injections of Toradol (A.R. 1822-24).

Dr. Razalan's and Dr. De Perio's subsequent treatment notes, which were submitted for the first time to the Appeals Council, reflect additional diagnoses of fibromyalgia, lumbosacral spondylolisthesis, generalized pain, scoliosis and sciatica (A.R. 77, 82, 88, 96, 118, 121-23).  In a treatment note dated in December of 2016 (also submitted for the first time to the Appeals Council), consulting rheumatologist Dr. Gilbert Gelfand confirmed Plaintiff's fibromyalgia based on diffuse myofascial pain above and below the diaphragm, tenderness to touch, and reported joint paint with intermittent swelling (A.R. 105-07).  Dr. Gelfand also diagnosed polyarthralgia (id.).

According to the available treatment records, Plaintiff complained of various body pains, swelling, numbness and weakness, for which Plaintiff was treated with, inter alia, steroid injections, Gabapentin, Norco and Flexeril for pain, Lorazepam for accompanying anxiety, and a referral to an orthopedist (although the referral was not approved).  See A.R. 88, 91-92, 101, 106, 122, 1821, 1850, 1865, 1866, 1871-73, 1894, 1905-07, 1922, 1928, 1930, 1958, 1979, 1997, 2007, 2058, 2071, 2074, 2077, 2083, 2088, 2092-93, 2095, 2099-2101, 2105, 2121, 2128, 2130, 2137-39, 2143, 2147-48).
///

The record contains a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" form "co-signed" by Dr. Razalan and dated May 12, 2015 (prior to any diagnosis of fibromyalgia) (A.R. 2055-57). Dr. Razalan opined that Plaintiff could lift and carry less than 10 pounds, stand and walk less than two hours in an eight-hour day, and sit less than two hours in an eight-hour day (A.R. 2055). Dr. Razalan opined that Plaintiff could sit five minutes and stand five minutes before needing to change positions, she must walk around every five minutes for five to 10 minutes at a time, and she needs the ability to shift at will and to lie down at unpredictable intervals one to three times during the day due to her peripheral neuropathy, swelling and pain (A.R. 2055-56). Dr. Razalan opined that Plaintiff could occasionally perform certain postural activities, except she could never climb ladders, has limits in reaching, handling, fingering, feeling, pushing and pulling because of pain, and Dr. Razalan also opined that Plaintiff has environmental limitations (A.R. 2056-57). Dr. Razalan further opined that Plaintiff would miss work approximately twice a month (A.R. 2057).[1]

---

[1] The record also contains CalWORKs forms signed by Dr. De Perio dated September 11, 2014 and September 16, 2015 (prior to Plaintiff's fibromyalgia diagnosis) (A.R. 1972-74, 2118-20). Dr. De Perio opined that Plaintiff could stand/walk for 0-2 hours at one time for a total of 0-2 or 2-4 hours standing/walking out of an eight-hour day, and could sit for 0-2 hours at one time for a total of 2-4 hours sitting out of an eight-hour day due to Plaintiff's sciatic nerve compression, lumbar spine pain with radiculopathy and obesity (A.R. 1973, 2119). In the most recent form, Dr. De Perio opined that Plaintiff is restricted from: (1) using her hands/fingers and feet for repetitive motion/movement due to neuropathy and muscle spasms; (2) working in cold weather due to pain; (3) lifting 10 pounds or more due to her lumbar and cervical disc disease, radiculopathy and nerve damage; (4) climbing, stooping, kneeling crouching, crawling, or reaching
(continued...)

Dr. Razalan provided another "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" form dated September 7, 2016 (also prior to Plaintiff's fibromyalgia diagnosis) (A.R. 1885-87).  In this form, Dr. Razalan expressed similar opinions.  See id. (opining, inter alia, that Plaintiff could lift less than 10 pounds, stand and walk less than two hours in an eight-hour day, sit less than two hours in an eight-hour day, would need to lie down at unpredicted intervals during a work shift, and would miss more than three days of work per month).[2]

The record contains no treating source statements post-dating Plaintiff's fibromyalgia diagnosis which address Plaintiff's functional limitations or abilities.  There is a referral dated December 11, 2017, from Dr. Razalan to "Physical Medicine" (Dr. Ziyad Ayyoub) to complete functional capacity assessment "paperwork" for social security (A.R. 73).  This referral states, "we are unable to fill out paper work, as [patient] needs functional capacity test/assessment, referring [patient] to be evaluated for possible [treatment] with physical medicine" (A.R. 73).  Dr. Razalan then indicated that Plaintiff had suffered fibromyalgia and generalized body pain for the past 24 months (i.e., since December of 2015)

_____

[1](...continued)
below the knees, from her waist to knees, from her waist to chest or from her chest to shoulders; and (5) more than occasionally balancing or reaching above the shoulder (A.R. 1973-74).  Dr. De Perio opined that Plaintiff is unable to bend side to side, or sit or stand for "even a short period of time" due to her severe low back and cervical pain with neuropathy (A.R. 1974).

[2]     The vocational expert testified that a person absent more than three days per month could not sustain any employment (A.R. 421).

(A.R. 73).

C.  **Emergency Room and Hospital Records**

There are records concerning many emergency room visits and one hospitalization.  See A.R. 589-708 (Gardena Hospital records); A.R. 713-942 (Long Beach Memorial Hospital records); A.R. 2407-19 (St. Francis Medical Center records).  These records span the years 2013-16.

Plaintiff presented on September 15, 2013, complaining of back pain radiating down her left leg (A.R. 852).  On examination, Plaintiff reportedly had paraspinal tenderness, decreased range of motion secondary to pain, and positive straight leg raising tests (A.R. 853-54).  Plaintiff was diagnosed with low back pain with radiculopathy, given Norco and prescribed ibuprofen, Vicodin and Flexeril (A.R. 854, 861, 866).

Plaintiff presented on December 29, 2014, complaining of anxiety, numbness in her extremities, chronic neck pain and chronic back pain (A.R. 946).  On examination, Plaintiff reportedly had paraspinal tenderness and decreased range of motion secondary to pain (A.R. 949). X-rays of her cervical spine and right shoulder were normal (A.R. 949-50).  She was diagnosed with anxiety and chronic back pain, given a Toradol injection and prescribed Norco (A.R. 950-51, 960).

Plaintiff presented on June 22, 2015, complaining of weakness with intermittent chest pain (A.R. 1047).  On examination, she

reportedly appeared anxious and she had some chest wall tenderness to palpation but an "unremarkable" EKG (A.R. 1048-49, 1052). She was diagnosed with atypical chest pain and ordered to follow up with her regular doctor (A.R. 1052).

Plaintiff presented on July 21, 2015, complaining of numbness in her extremities and chronic pain in the right side of her neck (A.R. 1090). On examination, Plaintiff reportedly had tenderness to palpation of the trapezius muscle (A.R. 1093). Plaintiff was diagnosed with musculoskeletal pain, given a Toradol injection and ordered to follow up with her regular doctor (A.R. 1093-94, 1104).

Plaintiff presented on August 12, 2015, complaining of anxiety and neck and jaw pain (A.R. 1121). On examination, there were no noted abnormalities and an x-ray of Plaintiff's chest showed no acute cardiopulmonary disease (A.R. 1125-26). Plaintiff was diagnosed with acute/chronic back pain, stress and anxiety, given a Toradol injection, Norco, Ativan and a "GI cocktail," and was ordered to follow up with her regular doctor (A.R. 1126).

Plaintiff presented on September 1, 2015, complaining of central chest pain, headache, face pain on the right side, and neck pain on the left side (A.R. 691). Plaintiff reportedly had a history of chronic pain for which she was seeing a pain management specialist, lumbar disk disease with associated chronic back pain, gastritis, a neurological problem causing intermittent right-sided weakness, nonstop menstrual bleeding, and anxiety disorder (A.R. 691). Examination findings reportedly were normal except for a slightly

elevated blood pressure and anxious mood (A.R. 691-92). Plaintiff was diagnosed with chronic pain syndrome and given a Toradol injection and Ativan (A.R. 692, 695). Since Plaintiff already had prescriptions for Norco, Flexeril, Mobic and Gabapentin, she was referred for follow up with her primary care physician, neurologist and her pain management specialist(A.R. 692).

Plaintiff presented on September 9, 2015, complaining of pain and numbness from her neck radiating down to her right arm and fingers (A.R. 1197). On examination, she reportedly had tenderness on passive range of motion in the right shoulder, pain radiating down the right extremity, and tenderness to the right paracervical muscles (A.R. 1199-1200). Plaintiff was diagnosed with cervical radiculopathy to the right upper extremity, given a Toradol injection and Norco, and prescribed a sling, Norco, Flexeril and Motrin (A.R. 1200, 1210).

Plaintiff presented on January 7, 2016, complaining of anxiety, heart palpitations with pressure, shortness of breath, epigastric discomfort and bilateral leg pain (A.R. 1392-93). On examination, Plaintiff reportedly had left upper quadrant tenderness and epigastric discomfort, but a normal EKG (A.R. 1395-97). She was diagnosed with gastritis and anxiety, given Valium and a GI cocktail, and ordered to follow up with her regular doctor (A.R. 1398, 1409-10).

Plaintiff presented on March 3, 2016, complaining of chest pain radiating to the left arm, left calf pain and left calf swelling (A.R. 1478-79). On examination, she reportedly had left chest wall tenderness and low grade tachycardia consistent with dehydration (A.R.

1481-84). She was diagnosed with chest pain, epigastric abdominal
pain, calf pain and dehydration, and referred to her regular doctor
(A.R. 1485).

Plaintiff presented on April 4, 2016, complaining of vaginal
bleeding and abdominal pain, nausea and vomiting (A.R. 605).
Plaintiff was diagnosed with possible gastritis or gastroenteritis,
uterine fibroids, anemia, transaminitis probably from ethyl alcohol
abuse, and a urinary tract infection, and she was given a shot of
morphine (A.R. 605-06, 614).

Plaintiff presented on April 6, 2016, complaining of heavy
vaginal bleeding and abdominal pain not relieved by Norco (A.R. 655).
Plaintiff was diagnosed with fibroids and abdominal pain and given a
Toradol injection (A.R. 655-56, 662). Plaintiff was referred to her
gynecologist for further evaluation of her fibroids, with a note that
she was due to have a hysterectomy (A.R. 655).[3]

Plaintiff presented on July 3, 2016, complaining of neck pain
radiating to the jaw, chest and arm (A.R. 1524). On examination,
Plaintiff reportedly had tenderness to palpation and limited range of
motion in her neck (A.R. 1527-28). Plaintiff was diagnosed with
cervical radiculopathy, given Toradol and Medrol injections and Valium
(A.R. 1529, 1537-38, 1540).

///

///

---

[3] Plaintiff underwent an inpatient hysterectomy at the
St. Francis Medical Center on April 13, 2016 (A.R. 2528-2640).

Plaintiff presented to Long Beach Memorial Hospital on July 19, 2016, complaining of chronic neck pain radiating to her jaw and the back of her head, preventing her from holding her head up (for which she was placed in a C-collar), generalized weakness and chest pain (A.R. 1560-61). Cervical spine MRI and CT scans were unremarkable (A.R. 1565, 1574, 1634). A MRI of Plaintiff's thoracic spine was suspect for a "dural AV fistula" (A.R. 1582). Plaintiff was admitted to the hospital, a dural AV fistula was ruled out, and her neck pain was stabilized with Percocet, Morphine and Tylenol (A.R. 1566, 1569, 1574-75, 1580-82, 1585-90). No clear underlying pathology was found (A.R. 1588). Plaintiff was referred for chronic pain management (A.R. 1575).

Plaintiff then went to the St. Francis Medical Center emergency room on July 22, 2016, complaining of back pain and headache and seeking a second opinion after having been admitted to Long Beach Memorial Hospital where she had been told there were no acute causes found (A.R. 2407). On examination, Plaintiff reportedly had no significant findings, so she was ordered to follow up with her primary doctor, neurologist and pain management specialist (A.R. 2408-09, 2419).

Plaintiff presented on September 22, 2016, complaining of chest pain (A.R. 1724, 1730-31). Testing reportedly was "unremarkable," and Plaintiff was prescribed Naprosyn and Carafate and ordered to follow up with her primary care physician (A.R. 1724, 1730-31).

///

///

1    **D.  Opinions of Consultative Examiners and State Agency**
2         **Physicians**

3

4         The consultative examiners and state agency physicians all
5    evaluated Plaintiff's condition in December of 2014, which was prior
6    to the time Plaintiff was diagnosed with fibromyalgia, and also prior
7    to the time of most of the treatment summarized above.

8

9         Consultative examiner Dr. Carlos Murales prepared a
10   "Comprehensive Psychiatric Evaluation" dated December 11, 2014 (A.R.
11   565-69).  Dr. Murales reviewed no psychiatric records (A.R. 565).
12   Plaintiff reportedly complained of anxiety and depression (A.R. 565).
13   Plaintiff was taking Lorazepam, Tramadol, Pantoprazole, Meclizine and
14   Flexeril (A.R. 566).  Dr. Murales diagnosed generalized anxiety
15   disorder and chronic dysthymic disorder (A.R. 568).  Dr. Murales
16   stated that Plaintiff has a "prominent medical condition that hinders
17   her capability to work or function," and she has an anxiety disorder
18   that "contributes to this incapacity but not to the point that she is
19   not able to perform either with others or at work" (A.R. 569).  Dr.
20   Murales opined that Plaintiff has no functional limitations from a
21   psychiatric standpoint (A.R. 569).

22

23        Consultative examiner Dr. Michael Wallack prepared a "Complete
24   Internal Medicine Evaluation" dated December 23, 2014 (A.R. 573-79).
25   Dr. Wallack reviewed no medical records (A.R. 574).  Plaintiff
26   reportedly complained of low back pain for several years that radiated
27   down her left leg, pain in her mid and upper back, buttocks, and neck
28   that radiated to both hips, arms, and legs, and chest pain related to

her anxiety (A.R. 573-74). Dr. Wallack stated that Plaintiff had not been given any injections, but had been prescribed Vicodin and had used a heating pad for her pain (A.R. 573). Plaintiff reportedly said her symptoms increased with sitting, standing, walking, lifting and bending, and she cannot climb stairs (A.R. 573). Within the space of two sentences, Dr. Wallack stated both that Plaintiff is a "poor historian" and that Plaintiff "appears to be a reliable historian" (A.R. 573).

On examination, Plaintiff reportedly had an inconsistent, intermittent limp favoring the left leg (which Dr. Wallack suggested may represent "exaggeration"), no other reported abnormalities, and an unremarkable lumbar spine x-ray (A.R. 575-78, 580). Dr. Wallack diagnosed low back pain, chest pain, controlled GERD, acne and obesity, and assessed no limitations (A.R. 577-78).[4]

State agency physicians reviewed the record as of December of 2014, and opined that Plaintiff would have no limitations

---

[4] The record contains a treatment note from Dr. Salvatore Danna dated June 8, 2015, also suggesting that Plaintiff may have been embellishing her symptoms. See A.R. 1976-77. Dr. Danna indicated that Plaintiff has a history of pain throughout her body without a "well-documented diagnosis" (A.R. 1976). On examination, Plaintiff reportedly had depression, pressured speech, some psychomotor retardation, moderate spasm and decreased range of motion in the low back, sensory loss, and gait with some stiffness of her back and protection of her low back with small steps and gentle movements (A.R. 1976). Dr. Danna opined that Plaintiff had carpal tunnel syndrome and early discogenic disease of the lumbosacral spine (A.R. 1976). Dr. Danna ordered EMG and nerve conduction studies (A.R. 1977). Dr. Danna prescribed Mobic, Neurontin and Plavix (A.R. 1977). There are no later records from Dr. Danna.

1  (A.R. 424-31).

2

3  **II.  The ALJ's Erred in the Evaluation of the Medical Opinion**
4       **Evidence.**

5

6      In assessing Plaintiff's physical residual functional capacity,
7  the ALJ gave "little" weight to Dr. Razalan's and Dr. De Perio's
8  opinions (A.R. 57-58).  The ALJ asserted that these doctors' opinions:
9  (1) appeared "excessive and inconsistent with the weight of the
10 medical evidence"; (2) were contradicted by the opinion of the non-
11 examining medical expert;[5] and (3) appeared to have been based on
12 Plaintiff's subjective allegations of pain, taken "at face value"
13 (A.R. 57-58).

14

15     A treating physician's conclusions "must be given substantial
16 weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see
17 Rodriquez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must
18 give sufficient weight to the subjective aspects of a doctor's
19 opinion. . . .  This is especially true when the opinion is that of a
20 treating physician") (citation omitted); see also Garrison v. Colvin,
21 759 F.3d 995, 1012 (9th Cir. 2014) (discussing deference owed to the
22 opinions of treating and examining physicians).  Even where the
23 treating physician's opinions are contradicted, as here, "if the ALJ
24 wishes to disregard the opinion[s] of the treating physician he . . .
25 must make findings setting forth specific, legitimate reasons for

26  ───────────────

27        [5]   The record variously references the non-examining
   medical expert as Dr. Ostrow, Dr. Arstrow, Dr. Astrow and Dr.
28 Ostarin (A.R. 49, 57, 58, 406-09).

doing so that are based on substantial evidence in the record."
Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation,
quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at
762 ("The ALJ may disregard the treating physician's opinion, but only
by setting forth specific, legitimate reasons for doing so, and this
decision must itself be based on substantial evidence") (citation and
quotations omitted).

        The reasons the ALJ stated for rejecting Dr. Razalan's and Dr. De
Perio's opinions do not comport with these authorities.  First, with
regard to the weight of the medical evidence, the ALJ stated that the
"medical records do not indicate that [Plaintiff's] pain in [sic]
symptoms consistently have limited her mobility, strength, or
sensation" (A.R. 55).  The ALJ also observed that Plaintiff sometimes
reported feeling well with no complaints and no findings of
abnormalities on examination, and at other times there was evidence of
diminished motion in the spine, positive straight leg raising tests
and neurological deficits.  See A.R. 55-58 (acknowledging that
Plaintiff reported that her symptoms wax and wane).  The ALJ also
observed that, while Drs. Razalan and De Perio opined that Plaintiff
has significant limits, Dr. Wallack stated that, when he examined
Plaintiff, she was "reasonably agile and walking without an assistive
device," "got on and off the examination table without difficulty,"
had no tenderness on palpation of the back in the midline and
paraspinal areas and otherwise had largely normal examination findings
(A.R. 56).  According to the ALJ, the objective clinical findings did
not suggest that Plaintiff's pain causes significant limitations,
particularly in the areas of standing and walking, because: (1) there

reportedly were no reported gait abnormalities (but see A.R. 575 (Dr. Wallack noting that Plaintiff walked with an inconsistent limp) and A.R. 1976 (Dr. Danna noting a stiff gait with small steps and gentle movements)); (2) Plaintiff reportedly was ambulatory without assistance; and (3) Plaintiff did not have documented "persistent restrictions in motion," ongoing neurological abnormalities, significant disuse atrophy, or reports of constant tender points as one might expect to find with the limitations Drs. Razalan and De Perio suggested (A.R. 58).

An ALJ properly may discount a treating physician's opinions that are in conflict with treatment records or are unsupported by objective clinical findings. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and the treating physician's own clinical notes can justify rejection of assessment); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly may reject treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor . . ."); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings

as well as the opinion's consistency with the record as a whole).

In the present case, however, no doctor discerned and identified any specific inconsistency between the treating physicians' opinions and the medical record. The ALJ never asked the non-examining medical expert whether there was any inconsistency between the treating physicians' opinions and the medical record. The medical expert apparently had reviewed some of the opinions of Dr. Razalan and Dr. De Perio. See A.R. 409 (medical expert confirming reviewing medical evidence through exhibit "15F" (i.e., A.R. 2402)). However, the medical expert did not discuss any opinion evidence (other than his own), did not discuss the medical record in any detail and did not even attempt to explain why the record supposedly supported his own opinion (A.R. 409-12). The state agency physicians did not review the opinions of Dr. Razalan or Dr. De Perio. See A.R. 424-32. The ALJ's lay discernment of an asserted inconsistency between medical record findings and the treating physicians' opinions cannot constitute substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

Moreover, as stated in Social Security Ruling ("SSR") 12-2p, fibromyalgia involves pain in all quadrants of the body which

"fluctuate[s] in intensity and may not always be present." See SSR
12-2p, 2012 WL 3104869, at *2 (July 25, 2012) (following American
College of Rheumatology Criteria for the Classification of
Fibromyalgia); see also Terry v. Sullivan, 903 F.2d 1273, 1275 n.1
(9th Cir. 1990) (SSRs are binding on the Administration). "[T]o date
there are no laboratory tests to confirm the diagnosis [of
fibromyalgia]." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir.
2004); see also Revels v. Berryhill, 874 F.3d 648, 666 (9th Cir. 2017)
("Revels") (observing that fibromyalgia is diagnosed in part by
evidence showing that another condition does not account for a
patient's symptoms). The ALJ did not acknowledge the fact that a
fibromyalgia sufferer will often display normal muscle strength and
unremarkable neurological and musculoskeletal results on examination.
See Revels 874 F.3d at 656 ("What is unusual about the disease is that
those suffering from it have muscle strength, sensory functions, and
reflexes that are normal. Their joints appear normal, and further
musculoskeletal examination indicates no objective joint swelling.
Indeed, there is an absence of symptoms that a lay person may
ordinarily associate with joint and muscle pain.") (internal
citations, quotations, and brackets omitted).

Neither the ALJ nor this Court possesses the medical expertise to
know whether the objective medical evidence is inconsistent with the
limitations Plaintiff's treating physicians found to exist. The ALJ's
lay inferences from Plaintiff's "normal" examinations and reports
(which conflict with other examinations and reports reflecting
allegedly debilitating pain) cannot properly impugn the medical
opinions in this case. See Revels 874 F.3d at 656-57; cf. Coleman v.

_Astrue_, 423 Fed. App'x 754, 755 (9th Cir. 2011) (ALJ erred by "rel[ying] on the absence of objective physical symptoms of severe pain as a basis for disbelieving [claimant's] testimony regarding" effects of fibromyalgia).

The ALJ also questioned Plaintiff's treatment, stating that Plaintiff:

> was never prescribed particularly potent medication to control her pain levels (e.g., Fentanyl and Methadone). Rather, pain management records suggest that, primarily, she was only prescribed Hydrocodone - Acetaminophen or some variation, which is not a particularly potent opioid.

(A.R. 56). As the ALJ elsewhere admitted, however, Plaintiff did receive trigger point injections (Toradol) on multiple occasions (A.R. 55). Plaintiff also received two lumbar epidural steroid injections for pain. (A.R. 1979, 1981, 1822-24). Given these facts, and the nature of Plaintiff's impairments, the pain treatment actually received by Plaintiff does not furnish a legitimate reason for rejecting the treating physicians' opinions.

With regard to the contradiction of the treating physicians' opinions with the non-examining medical expert's opinion, the contradiction of a treating physician's opinion triggers rather than satisfies the requirement of stating specific, legitimate reasons for discounting such an opinion. _See, e.g._, _Valentine v. Commissioner_, 574 F.3d 685, 692 (9th Cir. 2007); _Orn v. Astrue_, 495 F.3d 625, 631-33

22

(9th Cir. 2007); <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir.
2007). In any event, "[t]he opinion of a nonexamining physician
cannot by itself constitute substantial evidence that justifies
rejection of the opinion of . . . a treating physician. <u>Lester v.</u>
<u>Chater</u>, 81 F.3d at 831.

Finally, the ALJ's speculation that the treating physicians
uncritically accepted at "face value" all of Plaintiff's subjective
allegations of pain is not a specific and legitimate reason for
rejecting the treating physicians' opinions. An ALJ may not reject a
treating physician's opinion based on mere speculation concerning the
basis for the physician's opinion. <u>Lester v. Chater</u>, 81 F.3d at 832.
In particular, an ALJ may not properly speculate that a treating
physician's opinion was based simply on an uncritical acceptance of a
claimant's subjective complaints. <u>See</u> <u>Langley v. Barnhart</u>, 373 F.3d
1116, 1120-21 (10th Cir. 2004) (ALJ "improperly rejected" treating
physician's opinion in reliance on, <u>inter alia</u>, the ALJ's "speculative
conclusion" that the physician's opinion was "based on the claimant's
subjective complaints"); <u>Overby v. Colvin</u>, 2016 WL 1178951, at *5
(W.D. Wash. March 8, 2016), <u>adopted</u>, 2016 WL 1170362 (W.D. Wash.
March 25, 2016) ("The Court agrees with Plaintiff that the ALJ's
speculation as to the reasons why [the treating physician] opined as
he did is not a legitimate reason to discount the opinion . . .")
(dicta); <u>Gordon v. Colvin</u>, 2015 WL 685396, at *4 (C.D. Cal. Feb. 17,
2015) ("the ALJ's conclusion that [the treating physician] relied
wholly and uncritically on plaintiff's subjective complaints is
unsupported in the record"; the court observed that the treating
physician had tested, interviewed and monitored the claimant's

23

treatment for years); <u>Hill v. Astrue</u>, 2011 WL 4587688, at *3 (E.D. Okla. Sept. 30, 2011) ("the ALJ's speculation that [the treating counsellor's] opinions were the result of complete acceptance of and reliance on claimant's subjective complaints was inappropriate"); <u>Moore v. Astrue</u>, 2009 WL 724056, at *7 (D. Colo. March 18, 2009) (reversing ALJ's rejection of treating physician's opinion, finding that the ALJ's stated reason that "it appears [the physician] relied on [the claimant's] subjective complaints" was "improperly based on the ALJ's speculation"); <u>cf.</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record further is triggered "when there is ambiguous evidence or when the record is inadequate to allow for the proper evaluation of the evidence") (citation omitted); <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record to assure the claimant's interests are considered.  This duty exists even when the claimant is represented by counsel.").

Also significant to this analysis is the fact that the ALJ found Plaintiff has severe fibromyalgia.  As the Ninth Circuit recognized in <u>Revels</u>, fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms."  <u>See</u> <u>Revels</u>, 874 F.3d at 656 (citing <u>Benecke v. Barnhart</u>, 379 F.3d at 590).  "In evaluating whether a claimant's residual functional capacity renders them [sic] disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . ." (<u>id.</u>).  Hence, a certain degree of reliance on the subjective complaints of a fibromyalgia sufferer inevitably will be a
///

part of any assessment of the sufferer's residual functionality.[6]

III. **The Court is Unable to Deem the ALJ's Errors Harmless; Remand for Further Administrative Proceedings is Appropriate.**

The Court is unable to conclude that the ALJ's errors were harmless. <u>See</u> <u>Treichler v. Commissioner</u>, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); <u>McLeod v. Astrue</u>, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. <u>McLeod v. Astrue</u>, 640 F.3d at 888; <u>see also</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); <u>Dominguez</u>

---

[6]    In this regard, it also may be significant that the ALJ purported to rely on Dr. Wallack's and Dr. Danna's suggestions that Plaintiff might be embellishing her symptoms, even though these doctors made such suggestions <u>before</u> Plaintiff had been diagnosed with fibromyalgia (A.R. 59).

v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"). There remain significant unanswered questions in the present record, particularly with regard to: (1) the bases for the treating physicians' opinions; and (2) the impact of the relatively recent diagnosis of fibromyalgia, a severe impairment which was not factored into most of the physicians' assessments of Plaintiff's functional capacity.

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

2

3       For all of the foregoing reasons, Plaintiff's and Defendant's

4  motions for summary judgment are denied and this matter is remanded

5  for further administrative action consistent with this Opinion.

6

7       LET JUDGMENT BE ENTERED ACCORDINGLY.

8

9       DATED: March 7, 2019.

10

11                                    _____
                                              /s/
12                                    CHARLES F. EICK
                                UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28